FILED
 2008 May-29  AM 09:37
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| BARBARA L. DIAL, | ] |
| Plaintiff, | ] |
| vs. | ]    1:07-CV-1220-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

Barbara L. Dial ("Plaintiff") appeals the Commissioner's decision to terminate her period of disability and disability insurance benefits under the Social Security Act.  In a decision dated March 2, 2000, Plaintiff was previously found disabled, and was awarded period of disability and disability insurance benefits.  On April 19, 2004, she was notified that based on a continuing disability review, it was determined that she was no longer disabled and that she would receive her final payment in June 2004.  An Administrative Law Judge ("ALJ") affirmed this decision following a hearing

in December 2006. Ms. Dial timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

At the time Ms. Dial was denied benefits in December 2006, she was forty-seven years old with a high school education. (Tr. at 15.) Her past work experiences include employment as a poultry plant deboner, lead waitress, and waitress. *Id.* at 22. Ms. Dial claims that she remains disabled due to frequent migraine headaches, diabetes, transient ischemic attacks, and severe back, foot and joint pain. *See generally* Doc. 8.

Once a claimant becomes entitled to disability benefits, their continued entitlement must be reviewed periodically. 20 C.F.R. § 416.994(a). An individual's disability will be found to have ceased if there has been medical improvement related to the individual's ability to work and the individual is able to engage in substantial gainful activity. 20 C.F.R. § 416.994(b). The regulations define a "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). A

determination that there has been a decrease in the medical severity must be based on changes (improvement) in the symptoms, signs, laboratory findings associated with your impairment(s). *Id*. Medical improvement is related to the ability to work when there is not only a decrease in the medical severity of the individual's impairment but also when there is an increase in the individual's functional capacity to do basic work activities. 20 C.F.R. § 416.994(b)(1)(iii).

There are seven sequential steps that the ALJ uses in reviewing the question of whether disability continues. 20 C.F.R. § 416.994(b)(5)(I-vii). The review may end and benefits may continue if it is determined that a favorable decision can be made at any point in the sequential evaluation process. *Id*. The steps are as follows:

> (i) Step 1.  Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter?  If you do, your disability will be found to continue.
>
> (ii) Step 2.  If you do not, has there been medical improvement as defined [in the regulations]? . . .  If there has been no decrease in medical severity, there has been no medical improvement . . . .
>
> (iii) Step 3.  If there has been medical improvement, we must

determine whether it is related to your ability to do work . . . .

(iv) Step 4.  If we found at step 2 . . . that there has been no medical improvement or if we found at step 3 . . . that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (b)(3) and (b)(4) of this section apply . . . .

(v) Step 5.  If medical improvement is shown to be related to your ability to do work . . . we will determine whether all your current impairments in combination are severe (see § 416.921). This determination will consider all your current impairments and the impact of the combination of these impairments on your ability to function . . . .  When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  If so, you will no longer be considered to be disabled.

(vi) Step 6.  If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 416.960.  That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(vii) Step 7.  If you are not able to do work you have done in the past, we will consider one final step.  Given the residual functional capacity assessment and considering your age, education, and past work experience, can you do other work? If you can, disability will be found to have ended.  If you cannot, disability will be found to continue.

*Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Dial did not have any impairments that met or medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 23.) She also determined that since the comparison point determination, the medical evidence establishes that Plaintiff has experienced medical improvement. *Id.* The ALJ also made a specific finding that this medical improvement was related to Plaintiff's ability to work. *Id.* Under step four of the sequential evaluation, while the ALJ did not expressly discuss the applicability of the exceptions from 20 C.F.R. § 416.994(b)(3) and (b)(4), the facts do not indicate that either exception would apply to Plaintiff's situation.[1] According to the ALJ, Plaintiff's degenerative disk disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), history of bilateral carpal tunnel syndrome, fibromyalgia, arthritis, type I diabetes mellitus, migraine headaches, and transient ischemic attacks are all impairments which are considered "severe" based on the requirements set forth in the regulations. *Id.* The ALJ did not find Ms. Dial's allegations to

---

[1] These exceptions deal with issues such as advances in medical technology, prior error, fraud, and lack of cooperation. Neither party presented any arguments on these exceptions, therefore, they will not be discussed further.

be totally credible, and she determined that Plaintiff has the residual functional capacity to perform the exertional demands of sedentary work, or work which is generally performed while sitting and does not require lifting in excess of ten pounds. *Id.*

According to the ALJ, Ms. Dial is unable to perform any of her past relevant work, she is a "younger individual," and she has a "high school education" as those terms are defined by the regulations. *Id.* at 24. The ALJ determined that Plaintiff "does not have any transferable skills to other work within her residual functional capacity." *Id.* Although Plaintiff has limitations which prevent her from performing the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.21 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing. *Id.* These jobs include work as a cashier, a security monitor, an inspector, a sorter, and a phone order salesperson. *Id.* The ALJ concluded her findings by stating that Plaintiff's "disability ceased as of April 1, 2004, and she is no longer eligible for disability insurance benefits." *Id.*

II.     Standard of Review.

In this case, the issue before the ALJ was whether a finding of disability, previously made, should be terminated. The ALJ's decision to terminate the payment of disability benefits will be reversed only if it is not supported by substantial evidence. *Backlund v. Astrue*, 2008 WL 899244, at *2 (N.D. Fla. March 31, 2008).  The scope of the Court's review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). In determining whether substantial evidence exists, the Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

"Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).   "The substantial

evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).

III.  Discussion.

Ms. Dial alleges that the ALJ's decision should be reversed or remanded for two reasons. First, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are inconsistent with controlling legal principles. (Doc. 8 at 5.) Specifically, Plaintiff argues that the greater

weight of the evidence demonstrates that her disabling impairments persist. *Id.* Second, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's subjective allegations of pain. *Id.* at 8.

    A.    Evidence of Disability.

The comparison point decision reveals that Plaintiff was found to be disabled beginning November 16, 1996, primarily due to major depression. It was previously determined that because of the severity of her major depression, Plaintiff would be unable to perform the requirements of even sedentary work on a sustained basis due to deficits in her ability to respond appropriately to supervision, coworkers, and work pressures.

Upon reviewing the evidence in the record, the ALJ determined that Plaintiff's major depression was no longer of the severity that it precludes her from engaging in work activity on a sustained basis. (Tr. at 19.) To support this finding, the ALJ noted that upon seeing Dr. Kline for a consultive examination in December 2003, Plaintiff reported being disabled due to back problems, COPD, and fibromyalgia. *Id.* When questioned about her psychiatric history, Plaintiff reported that she had completed outpatient treatment at a mental health center three years prior, but said that she no

longer required psychiatric medication for depression.  *Id*.  Upon examination, Dr. Kline noted that Plaintiff exhibited no clinical signs of depression or anxiety.  *Id*.  He noted that her speech, conversation, mood, and affect were within normal limits; that she was fully oriented to person, place, and time; and her immediate and remote memory was intact.  *Id*.  After completing the examination, Dr. Kline assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 73, which equates to a mild mental impairment that imposes no greater than slight functional limitations upon occupational, social, or school functioning.[2]  Dr. Kline also concluded that Plaintiff had no severe psychiatric disorder and he opined that she was fully capable of managing financial affairs; functioning independently; understanding, remembering, and carrying out instructions; and responding

---

[2]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale.  The GAF scale ranges from 0 to 100 with a lower score indicating a greater level of social and occupational impairment.  A GAF score of 41-50 indicates "serious symptoms" and includes "impairment in social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 reflects mild symptoms, with some difficulty in social and occupational functioning. A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

appropriately to supervision, coworkers, and routine work pressures. *Id*.

The ALJ also noted that Dr. Swearingen maintained a long-term treating relationship with Plaintiff. *Id*. Dr. Swearingen's treatment notes from January through August 2003, reveal that Plaintiff had no significant symptoms associated with major depression. The only treatment reference for depression was in September 2005, when Dr. Swearingen placed Plaintiff on Zoloft, and in October 2005, when Plaintiff reported her depression had improved with the medication. *Id*.

Based upon this evidence, the ALJ concluded that Plaintiff experienced medical improvement, which related to her ability to work. The Court finds that the reasons the ALJ articulated in reaching this conclusion were explicit and adequate, therefore, this Court finds that substantial evidence supports the ALJ's finding.

B.   Allegations of Pain.

Plaintiff also asserts that the ALJ's evaluation of her subjective complaints of pain was improper. Specifically, Ms. Dial alleges that the ALJ "improperly discounted [her] allegations of pain" in determining that she had the functional capacity to perform less than the full range of sedentary

work.  (Doc. 8 at 8.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about

the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that Ms. Dial had underlying medical conditions, however, she did not conclude that the evidence confirmed the severity of the alleged pain arising from those conditions or that any medical condition existed that was of such severity that it could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff. (Tr. at 20-21.) The ALJ considered that in July 2003, Plaintiff was diagnosed with peripheral neuropathy secondary to bilateral carpal tunnel syndrome. *Id.* at 20. However, the ALJ found that at the time, it was noted that a motor strength examination showed Plaintiff maintained 80/100 grip strength on the right, 80-90/100 right upper extremity strength, 70-80/100

left grip strength, and 80/100 left upper extremity strength.  *Id*.  In February 2004, Dr. Chambers found no evidence of diminished range of motion of the wrists or upper extremities and noted that strength testing was normal bilaterally.  *Id*.  Similarly, Dr. Swearingen's treatment notes dated October 2004, through December 2005, reflect no complaints of upper extremity peripheral neuropathy or carpal tunnel symptoms.  *Id*.  By March 2006, Dr. Swearingen found Plaintiff to have full range of motion and full motor and muscle strength in the upper extremities without atrophy or evidence of active articular disease.  *Id*.

Addressing Plaintiff's allegations that she experiences disabling back pain that prevents her from sitting, standing, and walking for prolonged periods, the ALJ found that the medical evidence reflected only sporadic treatment for back pain.  *Id*.  When Dr. Hamo examined Plaintiff in June 2003, she denied having any history of neck or back pain.  *Id*.  In February 2004, Dr. Chambers noted that Plaintiff might have some difficulty in lifting and carrying, but he also opined that Plaintiff appeared fully capable of performing work related activities such as sitting, standing, walking, and handling objects without limitations.  *Id*.  Treatment records of Dr.

Swearingen from January 2003, through August 2006, show that Plaintiff only complained of back pain twice; once in November 2004, and the other in February 2006. *Id*. When Dr. Jones examined Plaintiff in February 2006, a MRI of the lumbar spine revealed widespread degenerative disk changes throughout the lumbar region. *Id*. Despite this finding, however, his physical examination demonstrated that Plaintiff's range of motion in her lumbar spine was 80% normal and she exhibited no evidence of sensory deficits or paraspinal muscle spasms. *Id*.

The ALJ also specifically considered Plaintiff's claims of right foot discomfort, arthritis in the right knee, and joint pain secondary to fibromyalgia. *Id*. In rejecting the disabling effects of these complaints, the ALJ noted that in March 2005, Dr. Martin found that while Plaintiff had pain and tenderness in the right knee due to arthritis, she maintained normal range of motion. *Id*. at 21. Dr. Martin also noted that despite the complaints of right knee pain, Plaintiff had not been taking her anti-inflammatory medication for the arthritis. *Id*. The ALJ also discussed treatment notes from Dr. Swearingen in March 2006, which indicate that Plaintiff had full range of motion in all extremities and normal muscle tone

without evidence of atrophy. *Id*. In June 2006, Dr. Cohen opined that Plaintiff's right thigh and foot discomfort were clearly non-claudicating as she was fully capable of ambulation without thigh discomfort and had no significant impairment in the right lower extremity. *Id*.

The ALJ also explained that although Plaintiff claims to have multiple debilitating migraine headaches each week, the medical evidence does not substantiate these allegations. *Id*. Instead, the ALJ determined that the medical evidence reflected only intermittent treatment for headaches. *Id*. To support this finding, the ALJ noted that in June 2003, Plaintiff reported to Dr. Hamo that she experiences only mild headaches without vomiting, nausea, or visual disturbances. *Id*. Similarly, when Dr. Chambers performed his consultive examination in February 2004, Plaintiff reported that her headaches had improved somewhat with medication. *Id*. In December 2004, Plaintiff sought emergency room treatment for an acute migraine headache, however, she rated her pain as only moderate in severity. *Id*. Finally, when Dr. Swearingen examined Plaintiff in June and August 2006, she actually denied having headaches and syncope. *Id*.

Lastly, the ALJ also rejected the medical severity of Plaintiff's COPD

allegations. The ALJ noted that Dr. Chamber's pulmonary function testing performed in February 2004, was essentially within the normal limits and actually failed to confirm the original diagnosis of COPD. *Id.* Also, Dr. Swearingen's treatment notes reflect only intermittent treatment for COPD exacerbations. *Id.* Although Plaintiff was placed on oxygen and a nebulizer 2-3 times per day in October and November 2005, Plaintiff testified at the hearing that she only requires oxygen during the night which the ALJ stated would not interfere with daytime work activities. *Id.* Dr. Swearingen's treatment notes also demonstrate that despite repeated warnings to quit smoking, Plaintiff continues to smoke a pack of cigarettes per day. *Id.* In fact, in December 2004, it was actually noted that Plaintiff's COPD was secondary to her chronic tobacco usage. *Id.* Finally, when Plaintiff saw Dr. Swearingen in both June and August 2006, she denied having dyspnea on exertion, congestion, difficulty breathing, shortness of breath, coughing, or wheezing. *Id.*

It appears to the Court that the ALJ specifically addressed Plaintiff's allegations of pain in her opinion, and she provided explicit and adequate reasons for rejecting Plaintiff's testimony. The objective medical and other

evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that she could perform less than the full range of light work.

IV.  Conclusion.

Upon review of the administrative record, and considering all of Ms. Dial's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 29th day of May 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671